**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dominic Phillip BROOKLIER and Samuel Orlando Sciortino, Defendants–Appellants.**

**No. 80–1455.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 18, 1980.

Decided Sept. 8, 1980.

Opinion Filed Jan. 23, 1981.

Certiorari Denied March 9, 1981.
See 101 S.Ct. 1514.

Donald B. Marks, Anthony P. Brooklier, Marks Brooklier, Beverly Hills, Cal., for defendants–appellants.

James Henderson, U. S. Dept. of Justice, Los Angeles, Cal., for plaintiff–appellee.

Before FLETCHER, ALARCON, and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

In 1974 Dominic Brooklier and Samuel Sciortino were indicted for several counts of violating the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1961–1968 (1976). Count I charged them with conspiring to conduct an extortion ring in violation of 18 U.S.C. § 1962(d) (1976).[1] One specific charge was that the defendants had conspired to extort money from Sam Farkas, a bookie. Several overt acts, including those resulting in the actual extortion from Farkas, were cited as being in furtherance of the conspiracy. On April 19, 1975, pursuant to a plea bargain, the defendants pled guilty to Count I and the other charges were dismissed.

Four years later the defendants were again indicted for violating RICO. Count II of the new indictment charged them with violations of 18 U.S.C. § 1962(c) (1976).[2] Most of the charges related to threats, extortion, and murder occurring after the 1975 conviction. One charge, however, revived the Sam Farkas incident. The government alleged that:

> In or about the Spring of 1973, in Los Angeles, California, the defendants extorted and caused the extortion of United States currency from Sam Farkas ....

Both the 1974 and 1979 charges related to a single incident of extortion from Farkas.

The defendants moved to have Count II dismissed under the double jeopardy clause insofar as it related to the Farkas extortion because they had already been convicted of conspiring to extort. The district judge denied the motion. The defendants brought this interlocutory appeal under *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).[3]

The double jeopardy clause of the fifth amendment states that "No person . . . shall . . . be subject for the same offence to be twice put in jeopardy . . . ." It establishes three distinct protections: (1) against a second prosecution for the same offense after acquittal; (2) against a second prosecution for the same offense after conviction; (3) against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). This appeal implicates the second protection. The only question presented is whether the government may charge a defendant with RICO violations including conspiracy to extort from Sam Farkas, and, after conviction, charge him with RICO violations including actual extortion from Sam Farkas.

The government insists that the *Blockburger* test is dispositive. In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court considered whether several offenses charged in a single prosecution were sufficiently different to permit the imposition of multiple sentences without violating the double jeopardy clause. It established a test emphasizing a comparison of the elements of the offenses:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. The government's contention in the instant case rests on two propositions. The first is that

---

1. 18 U.S.C. § 1962(d) (1976) makes it unlawful to conspire to violate the substantive provisions of RICO.

2. 18 U.S.C. § 1962(c) (1976) provides:

   It shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ....

18 U.S.C. § 1961(1)(A) (1976) defines "racketeering activity" as including extortion. 18 U.S.C. § 1961(5) (1976) defines a "pattern" of racketeering activity as at least two acts thereof.

3. The defendants also contend that the government violated its agreement to dismiss all charges related to the Farkas incident in return for a guilty plea to one charge. This argument is not raised by this interlocutory appeal.

*Blockburger* would have permitted the government to charge the defendants in a single prosecution with both violating RICO by conspiring to extort from Farkas and with violating RICO by actually extorting from Farkas. The second is that the *Blockburger* test applies without modification to all post–conviction prosecutions. The first proposition is irrefutable, the second problematic.

In *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), the Supreme Court held that under *Blockburger* a defendant could be charged in a single indictment with conspiracy and with the underlying substantive offense. Our court applied *Iannelli* to a RICO prosecution in *United States v. Rone*, 598 F.2d 564 (9th Cir. 1979), *cert. denied sub nom. Little v. United States*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). Therefore, it is clear that the government initially could have charged defendants Brooklier and Sciortino with both conspiracy and the underlying substantive offense. *See United States v. Wylie*, 625 F.2d 1371 at 1381–82 (9th Cir. 1980).

The more difficult question is whether the *Blockburger* "same elements" test applies without modification to post–conviction prosecutions, *i. e.*, government attempts to bring charges that could have been joined with earlier charges but were not.

In analyzing the breadth of *Blockburger's* application, it is important to be mindful of the three distinct protections embraced by the double jeopardy clause. Since *Blockburger* itself involved several charges brought in a single prosecution, it directly implicated only the protection against multiple punishments. The inquiry in such cases is limited to ascertaining the extent of the punishment authorized by Congress.

*See United States v. Wylie*, 625 F.2d at 1381 (9th Cir. 1980).

A post–conviction indictment, in contrast, implicates not only the protection against multiple punishments but also the protection against a second prosecution after conviction. This protection arises from classic double jeopardy concerns that a defendant not be forced to "run the gauntlet" twice. Even if the government could have initially prosecuted a defendant for multiple offenses, further analysis is necessary if it charges him with only one and holds the others in reserve. Policies of assuring finality, sparing defendants the financial and psychological burdens of repeated trials, preserving judicial resources, and preventing prosecutorial misuse of the indictment process all come into play. *See generally* J. Sigler, *Double Jeopardy* 156 (1969); *The Supreme Court, 1976 Term*, 91 Harv.L.Rev. 70, 108 (1977).

Many commentators, drawing on these policies, suggest that the *Blockburger* test should be applied only to single prosecutions and not to successive ones. Regarding the latter, they advocate requiring joinder of all charges arising from the same transaction. Charges arising from a single transaction would have to be brought in a single prosecution; those omitted would be waived.[4] *See, e. g.*, J. Sigler, *Double Jeopardy* 222–28 (1969); Note, *The Double Jeopardy Clause as a Bar to Reintroducing Evidence*, 89 Yale L.J. 962, 967–69, 976–81 (1980); *The Supreme Court, 1976 Term*, 91 Harv.L.Rev. 70, 106–114 (1977). This approach, labelled the "same transaction" test, has been adopted by the drafters of the ABA Criminal Justice Standards, *ABA Standards Relating to Joinder and Severance* § 1.3(c) (Approved Draft 1968), and the Model Penal Code, American Law Institute, *Model Penal Code*

---

4. Proponents of the same transaction test admit that there would be problems, albeit manageable ones, with defining a single transaction. *See, e. g., Ashe v. Swenson*, 397 U.S. 436, 454 n.8, 90 S.Ct. 1189, 1199 n.8, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). They also commonly advocate building certain safeguards into the test. For example, it has been suggested that successive prosecutions for offenses arising from a single transaction should not constitute double jeopardy if the separate trials are caused by the defendant's tactical moves, or if the second trial is due to the discovery of new evidence. *See, e. g.*, Note, *The Double Jeopardy Clause as a Bar to Reintroducing Evidence*, 89 Yale L.J. 962, 977 (1980).

§ 1.08–2(c) (Proposed Official Draft 1962). Its most eloquent spokesman is Justice Brennan. In *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), for example, he stated that:

> to allow successive prosecutions of the several offenses, rather than merely the imposition of consecutive sentences after one trial of those offenses, would enable the Government to "wear the accused out by a multitude of cases with accumulated trials." Repetitive harassment in such a manner goes to the heart of the Fifth Amendment protection.

359 U.S. at 200, 79 S.Ct. at 673 (concurring opinion) (citation omitted). *See also Ashe v. Swenson*, 397 U.S. 436, 448–60, 90 S.Ct. 1189, 1196–1202, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring).[5] *Cf.* Note, *The Double Jeopardy Clause as a Bar to Reintroducing Evidence*, 89 Yale L.J. 962, 967–69, 976–81 (1980) (advocating a variant of the double jeopardy test whereby facts alleged in one prosecution could not be alleged in a later one).

The Supreme Court has never expressly rejected the same transaction test. It has, however, declined to strictly apply the *Blockburger* test to post–acquittal prosecutions, thereby indicating that *Blockburger* is not dispositive of all successive prosecutions. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).[6]

Several circuit courts have nevertheless concluded that the *Blockburger* test governs all double jeopardy claims save those precisely within the ambit of *Ashe v. Swenson*. Among them is our own circuit. *See, e. g., United States v. Solano*, 605 F.2d 1141 (9th Cir. 1979), *cert. denied sub nom. England v. United States*, 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980); *United States v. Snell*, 592 F.2d 1083 (9th Cir.),

*cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *Brown v. Alabama*, 619 F.2d 376 (5th Cir. 1980); *United States v. Clark*, 613 F.2d 391 (2d Cir. 1979); *United States v. Brown*, 604 F.2d 557 (8th Cir. 1979). These conclusions are based on an interpretation of *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), in which the defendant was convicted of "joyriding" and then prosecuted for auto theft. State law defined joyriding as a lesser included offense of auto theft. The Court held that the double jeopardy clause barred indictment for a greater offense after conviction for a lesser included offense, expressly applying the analysis set forth in *Blockburger*. The Court, though, did not declare the *Blockburger* test dispositive of all post–conviction prosecutions. In fact, the *Brown* holding is a very narrow one that follows directly from *Blockburger*. At no time could Brown have been charged with both joyriding and auto theft. The former is a lesser included offense of the latter; to charge him with both, even in a single prosecution, would violate the *Blockburger* test. If *Blockburger* barred simultaneous prosecution, *a fortiori* it barred successive prosecutions. 432 U.S. at 166, 97 S.Ct. at 2225.

Because *Brown* does not expand on *Blockburger*, it sheds no light on the standard which should be applied to successive prosecutions. Although *Blockburger* is a useful starting point, such cases involve dangers which seem to require interposition of additional protections. *See Jordan v. Virginia*, No. 78–6540 (4th Cir. June 2, 1980). We do not believe that *Brown* should be interpreted as necessarily requiring strict application of the *Blockburger* test to all post–conviction prosecutions. We also recognize many advantages of the same transaction test espoused by Justice

---

5. Justice Brennan has espoused the same transaction test in a series of concurrences and dissents, which he lists in his dissent to the denial of certiorari in *Thompson v. Oklahoma*, 429 U.S. 1053, 1054, 97 S.Ct. 7680, 50 L.Ed.2d 770 (1977).

6. In *Ashe v. Swenson*, Ashe allegedly robbed six poker players in a single incident. He was first prosecuted for robbing four of the gamblers. After acquittal he was prosecuted for robbing the other two. The Court held that principles of collateral estoppel barred the second trial.

Brennan and might well be moved to adopt it if we had free rein.[7]

We believe such a course is precluded, however, not only by the decisions of this circuit in *United States v. Solano* and *United States v. Snell*, but also by the Supreme Court's recent decision in *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). In *Vitale*, the defendant struck and killed two small children while driving an automobile. He was immediately cited for failing to slow to avoid pedestrians, and he pled guilty. Soon thereafter he was charged with voluntary manslaughter. He interposed a double jeopardy defense, and the Court remanded for a state court determination of the legal relationship between the two crimes. In so doing, the Court interpreted *Brown* as importing the *Blockburger* test to all post–conviction prosecutions, describing it as "the principal test for determining whether two offenses are the same for the purposes of barring successive prosecutions." 100 S.Ct. at 2265. The disposition in *Vitale* also seems to reject the same transaction test. Under that test

there would be no need to remand, since the two offenses for which Vitale was successively prosecuted clearly arose from the same transaction.

The *Vitale* Court did not discuss the difficult questions raised by post–conviction prosecutions and we doubt that it intended to resolve them *sub silentio*. Nevertheless, we read *Vitale* as a tacit endorsement of the view that the *Blockburger* test, and nothing more, governs all post–conviction prosecutions. We must, of course, follow the Supreme Court's dictates however they are expressed. If the law of successive prosecutions is to be modified or clarified in this or some other more appropriate case, it will have to be by the Supreme Court and not by this panel.

The *Blockburger* test would permit simultaneous prosecution of the two charges at issue here. It was therefore permissible for the government to prosecute them successively. The judgment of the district court is affirmed.[8]

---

**7.** The two Ninth Circuit cases interpreting *Brown* as applying *Blockburger* to all post–conviction prosecutions may have read *Brown* more broadly than was necessary. In *United States v. Solano*, 605 F.2d 1141 (9th Cir. 1979), *cert. denied sub nom. England v. United States*, 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980), Solano had been prosecuted in 1968 for manufacturing drugs and conspiring to do so, and had been convicted. He was prosecuted in 1979 for RICO conspiracy charges that included, as overt acts, transactions subsumed by the prior conviction. The court rejected Solano's double jeopardy contention, applying the *Blockburger* test under the authority of *Brown* and finding no double jeopardy because the offenses comprised different elements.

In *United States v. Snell*, 592 F.2d 1083 (9th Cir.), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979), Snell was prosecuted for attempted extortion and conspiracy to commit bank robbery, and was convicted. When the conspiracy conviction was reversed on appeal the government began a new prosecution for attempted bank robbery. Snell contended that the new prosecution contravened the double jeopardy clause, asking the court to adopt Justice Brennan's same transaction test. The court declined the invitation, applied the *Blockburger* test, and held that double jeopardy did not lie. The court rejected Justice Brennan's same transaction approach because it "has not been adopted by the Supreme Court or this

court; in [*Walker v. Loggins*, 608 F.2d 731 (9th Cir. 1979)] we reaffirmed our adherence to the traditional *Blockburger* standard." 592 F.2d at 1085. The fact that the Supreme Court had not adopted the Brennan approach is not controlling, however, since the court had never considered a case squarely posing the issue. *Walker v. Loggins* does not appear to be on point; it is a basic *Blockburger* case involving a single prosecution for several offenses. *See also United States v. Snell*, 627 F.2d 186 (9th Cir. 1980) (rejecting Snell's attempt to reassert his double jeopardy claim).

**8.** The defendants rely heavily on *In re Nielsen*, 131 U.S. 176, 95 S.Ct. 672, 33 L.Ed. 118 (1889). In that case Nielsen, a Mormon, was prosecuted for bigamous cohabitation, convicted, and then prosecuted for committing adultery the day after the cohabitation period ended. The court reversed the second conviction on double jeopardy grounds. Defendants Brooklier and Sciortino assert that *Nielsen* establishes a generic exception to the *Blockburger* test, one that encompasses their case. They base this assertion on a footnote to the *Brown* opinion in which the court discussed *Nielsen*. 432 U.S. at 166 n.6, 97 S.Ct. at 2226 n.6.

The defendants read far too much into *Nielsen*. It is an aberrational case from which it is impossible to discern a general rule, and the Court's footnote in *Brown* merely acknowl-

edges that *Nielsen* might not fit the precise parameters of *Blockburger.* In the text of the *Brown* opinion, moreover, the Court implied that *Nielsen* is generally consistent with the *Blockburger* formulation, citing it for the proposition that when the same elements test bars a single prosecution for several offences it also bars their successive prosecution. 432 U.S. at 166, 97 S.Ct. at 2225. *See also Illinois v. Vitale,* 100 S.Ct. 2260, 2267 (1980); *United States v. Snell,* 592 F.2d 1083, 1085 n.2 (9th Cir.), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). As we have noted *supra,* at p. 622, the defendants in the instant case could have been prosecuted in a single trial for the two offenses at issue here. Consequently, even if *Nielsen* establishes a generic exception to *Blockburger,* that exception does not apply here.