962 F.2d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Randall Paul EVANS, Defendant-Appellant.
 No. 91-35519.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 6, 1992.*
Decided April 23, 1992.
 
 1
 Before EUGENE A. WRIGHT and ALARCON, Circuit Judges, and DAVIES,** District Judge.
 
 
 2
 MEMORANDUM***
 
 PROCEDURAL BACKGROUND
 
 3
 Randall Evans and 22 other individuals were indicted under a Superseding Indictment charging them with violating the federal racketeering laws ("RICO") and conspiracy to violate those laws. 18 U.S.C. §§ 1962(c) & (d).
 
 
 4
 Twelve of the 23 defendants pleaded guilty before trial. The jury found defendant Evans guilty, and he was sentenced to 20 years incarceration as to each of the two counts, to run consecutively. This court affirmed his conviction in United States v. Yarbrough, 852 F.2d 1522 (9th Cir.), cert. denied, 488 U.S. 866 (1988).
 
 
 5
 Evans filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. Evans' petition was denied and this appeal followed.
 
 FACTUAL BACKGROUND
 
 6
 Evans was a member of the radical right-wing, white-supremacist group known as the "Order." The Order was dedicated to overthrowing the United States government, which was perceived as being dominated by Jews. Members of the Order had previously associated themselves with various right-wing radical organizations, including the Ku Klux Klan and the National Alliance, a neo-Nazi group.
 
 
 7
 To achieve their goal of overthrowing the government, the group needed money. Thus, the Order planned several armed robberies. Members of the Order planned and executed armed robberies of banks and armored cars during the period from November 1983 to July 1984.
 
 
 8
 In addition, members of the Order were responsible for murdering two individuals. In May 1984, Richard West, a potential member of the Order was murdered because he was suspected to be a government agent. Then in June 1984, Bruce Carroll Pierce, a member of the Order, murdered by machine gun Alan Berg, a Jewish, Denver radio talk show host who had been a critic of extremist right-wing groups.
 
 
 9
 In October 1984, law enforcement agencies began to close in on the Order. After some violent confrontations between certain members of the Order and law enforcement officials, Evans and his co-defendants were captured.
 
 DISCUSSION
 I. Venue
 
 10
 Evans challenges the venue of his trial. He claims that the trial court erred by proceeding in the Western District of Washington, rather than the Northern District of California. Evans argues that the "major portion" of the Indictment stems from events that occurred in San Francisco.
 
 
 11
 The existence of venue is a question of law subject to de novo review. See United States v. Abernathy, 757 F.2d 1012, 1014 (9th Cir.), cert. denied, 474 U.S. 854 (1985). As a general rule, venue is proper in a district in which the offense was committed. See Fed.R.Crim.P. 18. An offense "begun in one district and completed in another, or committed in more than one district, may be prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).
 
 
 12
 In this case, Evans was indicted for participating in a racketeering enterprise and conspiring to do so. These are continuing offenses. See, e.g., United States v. Costellano, 610 F.Supp. 1359, 1388-91 (S.D.N.Y.1985). As such, the prosecution may occur in any district in which the criminal activity was begun, continued, or completed. In charging a pattern of racketeering activity, the government alleged numerous predicate crimes constituting the pattern of racketeering activity, including crimes committed in the Western District of Washington. Thus, venue was proper in the Western District of Washington.
 
 
 13
 Evans' trial counsel was not ineffective for failing to raise a venue challenge. Claims of ineffective assistance of counsel are governed by the two-pronged inquiry of Strickland v. Washington, 466 U.S. 668 (1984). The appellant must show (1) unprofessional error, and (2) that there is a reasonable probability that, but for the unprofessional error, the result of the proceeding would have been different. Since venue was proper in the Western District of Washington, Evans' counsel did not fall below the wide range of professionally competent assistance by failing to raise a venue challenge. 466 U.S. at 680.
 
 II. Conspiracy as a lesser included offense
 
 14
 Evans argues that conspiracy (Count II) is a lesser included offense of the substantive RICO violation (Count I). Evans' position apparently is that once the count for a pattern of racketeering activity was proved (Count I), the conspiracy charge (Count II) should have merged because the criminal conduct involved the same set of facts. The question of whether one crime is a lesser included offense of another is reviewed de novo. See United States v. Sneezer, 900 F.2d 177, 178 (9th Cir.1990).
 
 
 15
 In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court considered whether several offenses charged in a single prosecution were sufficiently different to permit the imposition of multiple sentences without violating the double jeopardy clause. The Court explained:
 
 
 16
 [t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offense or only one, is whether each provision requires proof of a fact which the other does not.
 
 
 17
 284 U.S. at 304.
 
 
 18
 In Iannelli v. United States, 420 U.S. 770 (1975), the Supreme Court held that under the Blockburger test a defendant could be charged in a single indictment with conspiracy and with the underlying substantive offense. This court applied Iannelli to a RICO prosecution, and held that participating in a racketeering enterprise and conspiring to do so are separate offenses. See United States v. Rone, 598 F.2d 564, 569-71 (9th Cir.1979), cert. denied sub nom. Little v. United States, 445 U.S. 946 (1980).
 
 
 19
 United States v. Brooklier, 637 F.2d 620 (9th Cir.1980), cert. denied, 450 U.S. 980 (1981) also involved the question of whether a defendant could be convicted of a substantive RICO offense and RICO conspiracy. We cited Rone with approval and explicitly stated that "the government could have charged [defendants] with both conspiracy and the underlying substantive offense." 637 F.2d at 622.
 
 
 20
 Thus, conspiracy to violate RICO is not a lesser included offense of the substantive RICO offense for engaging in a pattern of racketeering activity. Evans could properly be convicted of engaging in a pattern of racketeering activity and conspiring to do so. Evans' argument to the contrary is without merit.
 
 
 21
 Evans' trial counsel was not ineffective for failing to raise this issue at trial. Again, Evans has made an insufficient showing on the Strickland test: (1) he has failed to show that the trial counsel's performance fell below the wide range of professionally competent assistance, and (2) he has made no showing on the prejudice prong.
 
 III. Defendant's decision to stand trial
 
 22
 Evans argues that a co-defendant in the exact same position as Evans pleaded guilty and received a more lenient sentence than Evans who chose to stand trial. Evans claims that co-defendant Bentley pleaded guilty and received a sentence of 7 years pursuant to a plea agreement, whereas Evans stood trial, was convicted, and was sentenced to two consecutive sentences of 20 years for a total of 40 years. Evans claims that when Bentley was sentenced the court told him that he would have received the maximum sentence but for his plea agreement. According to Evans, Bentley was more culpable than he. Thus, Evans claims that he was penalized for exercising his right to stand trial.
 
 
 23
 In a pre-Guidelines case, the trial court's sentencing is reviewed for an abuse of discretion. See United States v. Messer, 785 F.2d 832, 834 (9th Cir.1986).
 
 
 24
 Evans relies on United States v. Capriola, 537 F.2d 319 (9th Cir.1976). Capriola involved nine defendants. By the time of trial, seven defendants had been dismissed or pleaded guilty. Those defendants received probationary sentences or terms to be served concurrently with sentences already being served. The remaining two defendants, Capriola and Freeze, elected to stand trial, were convicted and received, respectively, sentences of six and three years plus mandatory parole terms of three years. 537 F.2d at 320.
 
 
 25
 Capriola and Freeze appealed, arguing that more severe sentences were imposed on them because they elected to stand trial. We noted that there was a substantial disparity between those defendants who stood trial and those that did not, and held:
 
 
 26
 [w]hen there is substantial disparity in sentences imposed upon different individuals for engaging in the same criminal activity, the preservation of the appearance of judicial integrity and impartiality requires that the sentencing judge record an explanation. A formal statement of reasons is not necessary.
 
 
 27
 537 F.2d at 321.
 
 
 28
 In the present case, the principle of Capriola is not offended. As Evans himself argues, the trial court did explain that Bentley would have received the maximum sentence, as Evans did, but for the fact that the government had entered into a plea agreement with Bentley. Moreover, there is ample evidence in the record to explain the difference in sentences, and the trial record fully discloses Evans' culpability. Evans was a member of the Order from its inception and had participated in numerous dangerous and violent crimes perpetrated by the Order. Evans participated in the robbery of the Brinks' Ukiah, California armored car route. That robbery alone netted approximately $3,600,000 in cash. Evans received $40,000 for his role in the robbery. In addition to his role in the various crimes of the Order, Evans had signed a declaration of war against the United States.
 
 
 29
 As we noted in Capriola, no formal statement is needed to explain the disparate sentences. In the present case, there is sufficient evidence in the record to explain Evans' culpability and the consequent difference in sentences. In light of this evidence, it cannot be contended that Evans was punished "because" he elected to stand trial. The fact that there is a disparity in sentences between a defendant who stands trial and co-defendant who pleads guilty does not require appellate reversal. See United States v. Brainard, 745 F.2d 320, 323-24 (4th Cir.1984), cert. denied, 471 U.S. 1099 (1985).
 
 
 30
 IV. Defendant's confronting jury in prison clothing
 
 
 31
 Evans claims that despite his objection, he was compelled to appear before the jury in prison clothing during a particular morning session lasting approximately two hours. The trial court conducted a hearing into the circumstances by which Evans arrived at the courtroom in prison clothing, and found that his appearance in jail clothing was voluntary. Thus, Evans is challenging the finding of fact by the trial court. Findings of fact are reviewed under the "clearly erroneous" standard. See Maine v. Taylor, 477 U.S. 131, 145 (1986) ("clearly erroneous" standard applies to nonguilt findings of fact by district courts in criminal cases).
 
 
 32
 The trial court heard from a jailer who testified that Evans and the other co-defendants who appeared in jail clothing were each offered civilian clothing and each of them declined to wear such clothing into the courtroom. Although Evans himself testified that he had requested but was denied civilian clothing, the trial court found that Evans was not compelled to appear in jail clothing. On this appeal, Evans offers nothing to show that the trial court's decision was based on a clearly erroneous view of the facts.
 
 
 33
 Even if the trial court did err in finding that Evans was not compelled to appear before the jury in jail clothing, we would have little trouble finding that such error was harmless.
 
 
 34
 V. Severance and ineffective assistance of counsel
 
 
 35
 Members of the Order were charged with the murder of two individuals. Evans argues that he was not charged with murder and the trial court erred by denying his motion for severance, thereby allowing the jury to hear evidence of these murders as predicate crimes of the racketeering enterprise. In addition, Evans claims that a government witness identified Evans as a member of an "assassination team", compounding the prejudice he suffered as a result of the joint trial.
 
 
 36
 Evans presented a similar argument on direct appeal in United States v. Yarbrough, 852 F.2d 1522, 1531 (9th Cir.), cert. denied, 488 U.S. 866 (1988). There, this court held that Evans had waived this issue on appeal because he did not, as required, renew his severance motion at the close of the government's evidence. For the same reasons, we now reject Evans' argument.
 
 
 37
 Evans argues that his counsel was ineffective for failing to preserve his severance motion on appeal. Claims of ineffective assistance of counsel are governed by the two-pronged inquiry of Strickland v. Washington, 466 U.S. 668 (1984).
 
 
 38
 Evans claims that he was prejudiced because the jury was permitted to hear evidence of two murders allegedly committed by members of the Order, even though Evans was not one of the members charged with murder. The apparent rationale of Evans' claim of prejudice is the jury "transferred" the guilt of the co-defendants charged with murder to Evans. Such a contention is insufficient to satisfy the Strickland test that, but for the error, a reasonable probability exists that a different outcome would have obtained.
 
 
 39
 In United States v. Guerrero, 756 F.2d 1342, 1345-46, (9th Cir.), cert. denied sub nom., Booth v. United States, 469 U.S. 934 (1984) the Ninth Circuit affirmed the district court's denial of the defendants' motion for severance because the defendants did not satisfactorily demonstrate "why the jury could not reasonably have compartmentalized the evidence against each defendant in view of the careful instructions given by the trial judge." In the present case, the trial court instructed the jury to give separate consideration of the evidence against each co-defendant. The jury was instructed that Evans could not be found guilty under Count I unless they found that he committed at least two predicate crimes, which were listed in the indictment and did not include the two murders. Evans has failed to show that the jury was unable to follow these instructions and evaluate independently each co-defendants' guilt. Evans is not entitled to severance based on speculation as to the jury's inability to follow instructions. See United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.1980) (party challenging denial of severance must show more than that separate trial would have given him a better chance for acquittal; the prejudice must be of such magnitude that he was denied a fair trial), cert. denied, 449 U.S. 856 (1980).
 
 
 40
 Thus, had Evans' counsel raised the severance motion at the close of the government's case, it would not have properly been granted. The trial court denied Evans' severance motion in the pre-trial stages. Evans has failed to demonstrate that there is a reasonable possibility that had his trial counsel raised the issue again at the close of the government's case, that the trial court would have granted such a motion.
 
 
 41
 Furthermore, Evans cannot show that he was prejudiced by the trial court's exercise of discretion. The test for determining abuse of discretion in severance motions is whether a joint trial would be so prejudicial that the trial judge could exercise his discretion in only one way. Escalante, 637 F.2d at 1201. In this case, Evans and his co-defendants were jointly charged and should have been jointly tried. Id. The trial court carefully instructed the jury to consider each defendants' case separately. In Evans' case, the trial judge was not required to exercise his discretion in only one way, and there was no abuse of discretion.
 
 VI. Juror misconduct
 
 42
 Evans makes several arguments based on events that can be generally categorized as juror misconduct. A discussion of the legal principles follows.
 
 
 43
 When there is a possibility of prejudice from outside influences, it is the "affirmative duty of the trial court to take positive action to ascertain the existence of improper influences on the jurors' deliberative qualifications and to take whatever steps are necessary to diminish or eradicate such improprieties." Silverthorne v. United States, 400 F.2d 627, 643 (9th Cir.1968). The trial court's course of action in dealing with such improprieties will not be reversed unless it has clearly abused its discretion. See United States v. Polizzi, 500 F.2d 856, 881 (9th Cir.1974), cert. denied sub nom., Emprise Corp. v. United States, 419 U.S. 1120 (1975).
 
 A. juror's alleged viewing of movie
 
 44
 One of the co-defendants' counsel, Mr. Trujillo, informed the trial court that a movie entitled "Lady in Blue" aired on television over a weekend during trial. Mr. Trujillo thought the movie was remarkably similar to the general allegations with which the defendants were charged, and asked the trial court to make an inquiry into whether any juror had viewed the movie. The trial court questioned the jurors to see if any of them had seen the movie. Evans claims that juror Talley indicated that another juror, Rudis, saw the movie. However, Rudis did not state that he had seen the movie. When asked by the trial court if he was the official television watcher, Rudis made no response. The trial court found that no juror viewed the movie.
 
 
 45
 Evans challenges the trial court's handling of this incident of alleged juror misconduct. He argues that juror Talley could not have known that juror Rudis saw the movie unless Rudis told her so.
 
 
 46
 The trial court's course of action will not be reversed absent a clear abuse of discretion. See Polizzi, 500 F.2d at 881. In this case, the trial court conducted an inquiry into whether any juror had seen the movie. No juror answered affirmatively. No defendant moved for a mistrial on the basis of this alleged misconduct nor was this issue raised on direct appeal. The procedure adopted by the district court was adequate under the circumstances and there was no abuse of discretion. The facts do not support a finding that "the probability of prejudice arose and was not eliminated." Silverthorne, 400 F.2d at 644. Furthermore, Evans has offered insufficient evidence to show that the trial court's finding was based on a clearly erroneous view of the facts. See Taylor, 477 U.S. at 145.
 
 
 47
 B. alleged errors stemming from media coverage
 
 
 48
 Evans and the government seem to agree that there was substantial coverage of Evans' trial by the media. Evans argues that such media coverage deprived him of his constitutional right to a fair trial. Evans claims that a juror, Palmer, saw a familiar face on television, and had to quickly turn away so as to avoid hearing any extrajudicial commentary. Also, Evans argues that juror Palmer allegedly saw an article concerning another member of the Order who was not on trial. In addition, Evans claims that a juror heard the term "neo-trial", used by the media as a reference to the trial of Evans and his co-defendants. Evans also argues that juror Henderson allegedly overheard someone speaking about the trial while she was dining in a restaurant.
 
 
 49
 These instances of alleged misconduct are not of sufficient moment so as to cause one to fairly conclude Evans was denied a fair trial. The parties do not dispute that the media reported on the events at trial. In light of this publicity, the trial court adopted a standard practice of questioning the jury panel at the beginning of each day as to whether there had been any relevant incidents that occurred after the court recessed the day before. The trial court's practices were sufficient to remove any probability that prejudice might have arisen as a result of any alleged impropriety. It is interesting to note that no defense counsel made a motion for new trial based on any of the instances of juror misconduct that Evans now alleges. The trial court did not abuse its discretion in managing the effects that public attention had on the jury.
 
 
 50
 Evans provides another example of alleged juror misconduct. He submits that juror Henderson learned from a third person that someone (apparently, Bentley) had pleaded guilty in Evans' case. Upon learning of this alleged misconduct, the trial court conducted an inquiry and issued a curative instruction even though at the time the name of the defendant was not mentioned. Again, the trial court's handling of the affair did not constitute an abuse of discretion. The trial court's actions were sufficient to eliminate any probability of prejudice. The sufficiency of the trial court's actions are reinforced when considered in light of the fact only 10 of the original 23 defendants went to trial. Of the 13 that did not stand trial, 7 testified that they had pleaded guilty. The fact that one more defendant had pleaded guilty is cumulative and non-prejudicial.
 
 
 51
 Evans makes two final contentions of alleged juror misconduct. First, he claims that juror Sanders allegedly compared the "Move" fire in Philadelphia to the fire at Whidbey Island. In a conclusory manner, Evans claims that he was prejudiced by the inflammatory nature of this remark. He requests a "due process" hearing to determine the extent and content of the conversation.
 
 
 52
 It is not in every instance of alleged misconduct that the trial judge owes a duty to conduct an inquiry into the matter. The duty to conduct an investigation only arises when there is a reasonable probability of prejudice. See, e.g., United States v. Smith, 790 F.2d 789 (9th Cir.1986) (quoting Silverthorne, 400 F.2d at 643). Any alleged comparison of the two fires does not create a reasonable probability of prejudice to defendant Evans. We find no abuse of discretion.
 
 
 53
 Second, Evans argues that juror Neely answered a question concerning the function of an SWR meter, thereby, allegedly, helping the government's case and demonstrating his prejudice against the defendants. Evans' allegations of prejudice or bias lack specificity and sufficient factual content. Evans has not made a sufficient showing as to a probability of prejudice and it was not error for the trial court to handle the manner in the way it did.
 
 
 54
 In summary, Evans has presented several instances of alleged juror misconduct. All of these instances stem from the publicity given to the trial of Evans and his co-defendants. As the Supreme Court stated in Smith v. Phillips, 455 U.S. 209, 217 (1982):
 
 
 55
 due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable of and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.
 
 
 56
 In Evans' case, the trial court from the outset admonished the jury to avoid any extrajudicial references to the trial, and questioned the jurors at the beginning of each day into whether there were any incidents about which the court should be aware. Notwithstanding Evans' allegations to the contrary, there are no facts offered that would indicate the jury was not able to decide the case solely on the evidence before it. The Constitution requires no more.
 
 VII. Refusal to litigate search and seizure
 
 57
 Evans allegedly requested the government to produce the warrant used in searching the "Bonner Trailer" so that he could challenge the constitutionality of the search. According to Evans, the government's failure to produce the search warrant renders the search constitutionally infirm. Thus, he argues that the fruits of the search should be excluded and his trial counsel was ineffective for not so arguing.
 
 
 58
 Evans did not challenge the search in his original 28 U.S.C. § 2255 motion. He claims that he raised this issue in his brief of objections at the trial court, and this should be sufficient. He relies on United States v. Walters, 638 F.2d 947 (6th Cir.1981).
 
 
 59
 Evans' reliance on Walters is misplaced. In Walters, the Sixth Circuit held that a party must challenge the findings of a magistrate within 10 days or further appeal is waived. 638 F.2d at 949-50. The Walters court said nothing about whether the filing of objections is the same as raising a challenge via § 2255. Furthermore, we subsequently rejected the Sixth Circuit's conclusion that a rule of absolute waiver of appeal is necessary to achieve the congressional goal of reducing the workload of the district courts. See Britt v. Simi Valley Unified School Dist., 708 F.2d 452, 454-55 (9th Cir.1983).
 
 
 60
 Since Evans did not raise this issue at trial in his original § 2255 motion, he may not raise it on appeal. See Egger v. United States, 509 F.2d 745, 749 (9th Cir.), cert. denied, 423 U.S. 842 (1975).
 
 VIII. Ineffective assistance of counsel
 
 61
 As explained above, claims of ineffective assistance of counsel are governed by the two-pronged inquiry of Strickland v. Washington, 466 U.S. 668 (1984). The appellant must show (1) unprofessional error, and (2) that there is a reasonable probability that, but for the unprofessional error, the result of the proceeding would have been different. In reviewing the ineffectiveness claim, the court must consider the totality of the evidence before the judge or jury. Id. at 695.
 
 A. trial tactics
 
 62
 Evans challenges the tactics of his trial counsel. Evans claims that his counsel represented him in a manner adverse to his interests. In addition, he claims his counsel failed to make appropriate objections, presented an ill-conceived "state of mind" defense, and conducted cross-examinations that, rather than aiding Evans, damaged his chances for acquittal because the questions linked Evans to the Ukiah armed robbery.
 
 
 63
 In Strickland, the Supreme Court eschewed any specific set of guidelines to govern defense counsel's performance, recognizing that to do so would "interfere with constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." 466 U.S. at 689. Evans is challenging the tactical decisions of his counsel. In such situations, judicial scrutiny must be highly deferential, and the defendant must overcome the strong presumption that counsel's conduct falls within the wide range of professionally acceptable representation. Id. Evans has not rebutted this presumption.
 
 B. evidence of prior criminal conduct
 
 64
 Evans argues that his trial counsel was ineffective in failing to object to the admission of certain evidence pertaining to Evans' past criminal conduct. In addition, Evans claims that trial counsel was ineffective by not challenging the trial court's decision to admit such evidence into the record, and by not seeking a curative instruction.
 
 
 65
 Even though Evans did not testify in his defense, evidence of his misdemeanor arrest in Madras, Oregon was introduced. In general, character evidence is not admissible to prove conduct in conformity therewith. Rule 404(b) of the Federal Rules of Evidence states the applicable rule:
 
 
 66
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 67
 Thus, evidence of Evans' prior criminal history is inadmissible to show action in conformity therewith. The government claims that the evidence was offered to show a connection between Evans and other members of the Order (Barnhill, Parmenter and Matthews, the leader of the Order). Thus, the evidence was admissible for the purpose of showing a plan or knowledge of the enterprise's members and affairs.
 
 C. representation during critical stage
 
 68
 Evans claims that he was not represented by counsel during the discussion of "important evidence." Apparently, the claim of nonrepresentation stems from the admission of the government's Exhibit 111-110. At the close of the day on November 21, 1985, after the jury had been excused, there was a conversation between the trial judge, three defense attorneys and a prosecutor. Although the trial judge explained that any defense counsel and defendants who were interested in the discussion could remain, Evans and his counsel were not present.
 
 
 69
 During the discussion, the prosecutor indicated that the government would be offering into evidence a list of telephone messages that, according to the government, was written by co-defendant Lane. The trial judge noted that there may be some problems with foundation and asked Lane's counsel if he had any objections. Lane's counsel stated no objection for the record. Because the other co-defendants' counsel, including that of Evans, were not present, the trial judge withheld ruling on the admissibility and decided that the issue would be resolved the following day.
 
 
 70
 On the following day, Plaintiff's Exhibit 111-110 was admitted without objection by Evans' counsel or any counsel for any of the co-defendants. Given that no other defense attorney objected, especially counsel for Lane who knew of the evidence, it cannot be said that Evans' counsel acted in an objectively unprofessional manner in failing to object.
 
 
 71
 D. jury instruction as to defense theory of the case
 
 
 72
 Evans claims that if it was proper for his counsel to pursue a state of mind defense (which Evans has previously argued as unsound and contrary to his interests), then his counsel should have at least sought a jury instruction which accounted for his theory of the case.
 
 
 73
 Evans relies primarily on United States v. Lemon, 824 F.2d 763 (9th Cir.1987). In Lemon, the trial court refused to give the defendant's requested jury instruction on self-defense and defense of a third person. We affirmed, stating that "[f]ailure to give instructions regarding a theory of defense is reversible error if the theory is legally sound and evidence in the case makes it applicable." 824 F.2d at 764. Thus, Lemon does not stand for the proposition that a defense attorney deprives his client of effective assistance by failing to seek a "defense theory of the case" instruction. Rather, Lemon stands for the proposition that the trial court, not counsel, commits error by failing to give a requested instruction if the theory is legally sound.
 
 
 74
 Thus, Strickland remains the standard for evaluating the effectiveness of Evans' counsel by not seeking a "defense theory of the case" instruction. Evans, again, has failed to show that (1) his counsel's performance in that regard fell below the wide range of acceptable professional conduct, and (2) that were it not for this error, there is a reasonable probability of a different outcome.
 
 IX. Prosecutorial misconduct
 
 75
 Evans claims that the closing argument by the government contained inflammatory and prejudicial material in that the prosecutor compared the group of defendants to a group of thieves and murderers. Apparently, the prosecutor quoted the remarks of Peter Hill who was a hostage in the TWA hijacking crisis in Beirut. Mr. Hill described the hijackers as a band of thieves and murderers. The prosecutor thought this description fit the defendants equally well. Evans claims that this statement by the prosecutor amounts to prosecutorial misconduct. In addition, Evans requests the opportunity to question Mr. Hill.
 
 
 76
 Evans also argues that the government impermissibly merged two offenses, i.e., robberies, in closing argument. Evans maintains that he was only charged with conspiracy to rob at Lookout, not committing the Northgate robbery.
 
 A. prosecutor's closing remarks
 
 77
 Evans failed to object to the government's closing argument. Since there was no objection at trial, the allegations of improper argument are reviewed for plain error. See United States v. Molina, 934 F.2d 1440, 1444 (9th Cir.1991). The reviewing court will reverse for plain error " 'only in those circumstances in which a miscarriage of justice would otherwise result.' " Id. (quoting United States v. Wallace, 848 F.2d 1464, 1473 (9th Cir.1988)).
 
 
 78
 Here, the prosecutor quoted Mr. Hall but made clear that he was not talking about the facts of this case. The prosecutor simply offered an analogy. This does not constitute plain error. Evans has not demonstrated that a miscarriage of justice would result if this Court does not reverse. Nor could Evans make such a showing in light of the voluminous evidence presented that was probative of his guilt. Therefore, the rhetorical device employed by the prosecutor affords Evans with no basis for relief. Cf. United States v. Rewald, 889 F.2d 836, 862 (9th Cir.1989) (government's use of metaphors does not violate the dictates of due process), cert. denied, --- U.S. ----, 111 S.Ct. 64 (1990).
 
 B. merging of offenses
 
 79
 Evans criticizes the prosecution's method of argument, arguing that the prosecutor "merged" the charges of the Northgate robbery with the charges of the conspiracy to commit robbery (the Lookout conspiracy). Prosecutor's sought to counter the defense counsel's contention that the existence of the Lookout conspiracy was incredible since it involved a plan to rob the same armored car route that defendant and others had robbed before (the Ukiah robbery). The prosecution argued that it was not incredible for the defendant to plan to rob the same armored car twice since some other members of the Order had robbed a different armored car route twice (Northgate and Fred Meyer robberies).
 
 
 80
 As with the prosecution's analogy or metaphor discussed above, the prosecution's arguments did not constitute plain error. There is no threat of a miscarriage of justice based on the prosecutor's argument. As explained above, the jury was instructed to consider each defendants' guilt independently. Any prosecutorial misconduct alleged by Evans is insufficient to form the basis for habeas corpus relief.
 
 
 81
 On direct appeal, in United States v. Yarbrough, 852 F.2d 1522 (9th Cir.), cert. denied, 488 U.S. 866 (1988), the court reviewed co-defendant McBrearty's claim of prosecutorial misconduct. The court held that, on balance, the prosecutor's actions were not sufficiently outrageous to require a mistrial. The court stated the governing rule as follows:
 
 
 82
 Prosecutorial misconduct does not require reversal unless the misconduct deprives the defendant of a fair trial. The test for determining whether prosecutorial misconduct requires a mistrial is whether the remarks were improper and whether they prejudicially affected substantial rights of the defendant. Also, misconduct does not require reversal where there is strong evidence of the defendant's guilt.
 
 
 83
 852 F.2d at 1539 (citations omitted).
 
 
 84
 As we explained on direct appeal speaking to Evans' co-defendant McBrearty, "[w]here the evidence is so strong against [defendant], and the prosecutor's 'misconduct' relatively innocuous, it cannot be said that [defendant's] rights were substantially affected." 852 F.2d at 1539. The same goes for defendant Evans. Evans is not entitled to any relief as a result of any alleged prosecutorial misconduct. See United States v. Wilcox, 640 F.2d 970, 972-73 (9th Cir.1981) (no relief by way of habeas corpus unless the claimed error constituted a fundamental defect which inherently results in a "complete miscarriage of justice").
 
 CONCLUSION
 
 85
 For the reasons discussed above, the district court's denial of Evans' habeas corpus petition is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 The Honorable John G. Davies, United States District Court for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3