**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Inez Eaton GUERRERO, Patrick John O'Shea, Stephen Michael Kessler, Cynthia Walker and Donald Gene Booth, Defendants-Appellants.**

Nos. 82–1775 to 82–1776 and 83–3000 to 83–3002.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 10, 1982.

Decided June 7, 1984.

Jack Wong, Asst. U.S. Atty., Charles H. Turner, U.S. Atty., Portland, Or., for plaintiff-appellee.

Stephen D. Krohn, Ronald H. Hoevet, Stephen F. Crew, Frank Noonan, Winfree & Noonan, Norman Sepenuk, James L. Collins, Portland, Or., for defendants-appellants.

Before WRIGHT, CANBY and BOOCHEVER, Circuit Judges.

PER CURIAM:

Defendants appeal their convictions from a jury trial on charges of conspiracy to commit bank robbery, bank robbery, distribution of heroin, and receipt of money taken illegally from a bank.

### I. Joint Trial and Severance

Where both multiple defendants and multiple offenses are involved, the propriety of joinder is governed by Fed.R. Crim.P. 8(b). *United States v. Ford,* 632 F.2d 1354, 1371 (9th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981). Whether separate acts constituting separate offenses are within the same series as required for joinder under Rule 8(b) depends on the degree to which the acts are related. *United States v. Satterfield,* 548 F.2d 1341, 1344 (9th Cir.1977), *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978). Separate acts are related if they arise out of a "common plan, scheme, or conspiracy." *United States v. Ford,* 632 F.2d at 1372. As the conspiracy charged encompassed both the robbery and drug offenses, the joinder of these defendants and offenses was proper under the Rule.

Nor did the district court abuse its discretion in denying defendants' motions for severance under Fed.R.Crim.P. 14. The district court correctly concluded that a joint trial would not unduly prejudice any defendant. *See United States v. McDonald,* 576 F.2d 1350, 1355 (9th Cir.), *cert. denied,* 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1978). Although some of the evidence adduced at trial related only to the guilt of one or more, but less than all

of the defendants, defendants have not satisfactorily demonstrated why the jury could not reasonably have compartmentalized the evidence against each defendant in view of the careful instructions given by the trial judge. *See United States v. Escalante,* 637 F.2d 1197, 1201 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). As to defendant Walker's motion, we do not think that the disparity in proof was so great that it was an abuse of discretion to deny her motion for severance. *See United States v. Brady,* 579 F.2d 1121, 1128 (9th Cir.1978), *cert. denied,* 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979).

### II. Change of Venue

 In determining whether to grant a motion for change of venue, the question is whether it is possible to select a fair and impartial jury. *United States v. McDonald,* 576 F.2d at 1354. We have reviewed the record of the voir dire examination and conclude that the district court did not abuse its discretion in refusing to grant a change of venue. *See United States v. Flores-Elias,* 650 F.2d 1149, 1150 (9th Cir.), *cert. denied,* 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 223 (1981). The fact that pretrial publicity had been great and that many of the prospective jurors were acquainted with some of the facts of the case is insufficient to require a change of venue so long as the jurors are able to set to one side any impressions gained from the publicity. *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *Silverthorne v. United States,* 400 F.2d 627, 638–639 (9th Cir.1968), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971). The voir dire demonstrates that the pretrial publicity was not so prejudicial as to create in the minds of the prospective jurors any preconceived notions regarding the guilt of any of the defendants that could not be set aside by the jurors. Thus, *Irvin v. Dowd* is clearly distinguishable.

 Nor do we find *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), or *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), apposite. This case does not present the extraordinary circumstances found to exist in *Sheppard* and *Estes.* Accordingly, we decline defendants' invitation to infer "inherent prejudice" from the extensive publicity which preceded this trial. *See United States v. Blanton,* 719 F.2d 815, 832 (6th Cir.1983) (en banc), *petition for cert. denied,* —— U.S. ——, 104 S.Ct. 1592, 80 L.Ed.2d 125 (1983).

### III. Challenges of Jurors for Cause

 The district court has broad discretion in ruling on challenges of jurors for cause. *United States v. Le Pera,* 443 F.2d 810, 812, (9th Cir.1971). Here, the district court made an objective assessment of each juror's impartiality, after inquiring into the juror's knowledge of the facts. *See Silverthorne v. United States,* 400 F.2d at 638–39. Our review of the voir dire examination of jurors Roger May, Judith Barrett and David Rhys satisfies us that the district court did not commit "manifest" error in refusing defendants' challenges for cause. It was not an abuse of discretion for the trial judge to decide on the basis of each juror's answers to the questions put to them that these jurors could place the pretrial publicity to one side and try their best to render an impartial verdict. We think that the law does not require more of a conscientious juror. *See, e.g., United States v. Miller,* 666 F.2d 991, 999 (5th Cir.), *cert. denied,* 456 U.S. 964, 102 S.Ct. 2043, 72 L.Ed.2d 489 (1982); *United States v. Jimenez-Diaz,* 659 F.2d 562, 568 (5th Cir.1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982); *Geagan v. Gavin,* 292 F.2d 244, 248–49 (1st Cir. 1961). We do not view *United States v. Marshall,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), as controlling this case. There, inadmissible and extremely prejudicial evidence reached a majority of the jurors while the trial was in progress. In the present case, by contrast, the events surrounding the escape from Rocky Butte Jail, most of which were admitted into evidence anyway, were known by only three

of the jurors, and their knowledge had been acquired, and its impact incurred, long before the trial began.[1]

### IV. Admission of Evidence of Flight

 Evidence of flight is generally admissible as evidence of consciousness of guilt. *See, e.g., United States v. Hernandez-Miranda*, 601 F.2d 1104, 1106–07 (9th Cir.1979); *Shorter v. United States*, 412 F.2d 428, 430 (9th Cir.), *cert. denied*, 396 U.S. 970, 90 S.Ct. 454, 24 L.Ed.2d 436 (1969). The test in *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir.1977), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978), is met here. The fact that the escape took place the day before defendants were to be arraigned on the charges involved in this case strongly suggests that the escape was motivated by considerations related to this case. *See United States v. Hernandez-Miranda*, 601 F.2d at 1107; *United States v. Peltier*, 585 F.2d 314, 323 (8th Cir.1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979).

### V. Admission of Possession of False Identification

 It was not an abuse of discretion for the district court to admit evidence that defendant Guerrero was carrying false identification at the time of his arrest. Evidence of assumption of a false name following the commission of a crime is relevant as an admission "by conduct, constituting circumstantial evidence of consciousness of guilt and hence of the fact of guilt itself." *McCormick on Evidence* § 271, at 655 (2d ed. 1972). *See United States v. Boyle*, 675 F.2d 430, 432–33 (1st Cir.1982); *Marcoux v. United States*, 405 F.2d 719, 721 (9th Cir.1968). Furthermore, because Guerrero does not indicate how this evidence prejudiced him beyond that "which all defendants must suffer when probative evidence is introduced against them," his argument that it should have been exclud-

ed under Fed.R.Evid. 403 is without merit. *United States v. Boyle*, 675 F.2d at 433.

### VI. Admission of Other Crimes

The district court refused to grant defendant Guerrero's motion for a mistrial after a witness, in response to the government's question whether he had ever seen or met Guerrero before, answered, "He was in the penitentiary at the same time I was." Based on this statement, Guerrero argues that the jury could readily infer that he had had a prior criminal conviction. In *United States v. Pavon*, 561 F.2d 799 (9th Cir.1977), we said that evidence pointing strongly to an inference of a prior conviction should be excluded if direct evidence of the conviction could not have been introduced. *Id.* at 802.

 Assuming that it was error to admit the witness's statement, it was nevertheless harmless. When an error in the admission of evidence is not of constitutional proportions, reversal is not required unless it is more probable than not that the error materially affected the verdict. *United States v. Rohrer*, 708 F.2d 429, 432 (9th Cir.1983); *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir.1977). In a similar case, we held that admission of the testimony was harmless because it came up only incidentally, the witness made no aggravated or repeated references to the subject involved, and he did not state the crime for which the defendant was being held. *United States v. Ezzell*, 644 F.2d 1304 (9th Cir.1981). Here, it is more probable than not that the passing reference to Guerrero's prior incarceration in the state penitentiary, made during an 11-day trial, did not materially affect the verdict.

 In addition, it was not an abuse of discretion for the district court to deny Walker's motion for mistrial. The motion was based on the allegedly improper admission into evidence of Walker's past drug dealings, pursuant to Fed.R.Evid. 404(b). Walker failed to object contemporaneously

---

1. O'Shea also challenges the district court's failure to excuse one of the alternate jurors and six of the prospective jurors who had been challenged for cause. We find no abuse of discretion in the district court's failure to excuse these jurors for cause.

and to move to strike the testimony. Her objection accordingly was not properly preserved. Nor should the evidence have been excluded under Fed.R.Evid. 403. Where the testimony concerning past drug dealings is closely related to the offense charged and is otherwise relevant, the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice. *United States v. Harrison,* 679 F.2d 942 at 948 (D.C.Cir.1982).

■ Similarly, there was no error in admitting agent Barclay's testimony concerning a June 11, 1981 meeting with defendant Kessler. The testimony merely established that Kessler had been purchasing and selling heroin during the period encompassed by the indictment. Consequently, the testimony was admissible to show capacity and knowledge relevant to the drug offenses charged in the indictment. *See United States v. Jones,* 438 F.2d 461, 466 (7th Cir.1971).

## VII. Bruton Error

■ We assume, without deciding, that the admission of agent Mitchell's testimony concerning certain out of court statements by O'Shea which tended to implicate defendants Kessler and Booth in the bank robbery violated the rule of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Violations of the *Bruton* rule, however, do not require reversal if the other evidence of guilt was overwhelming and the prejudice to the defendant from his codefendants' admission slight by comparison. *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340 (1972); *United States v. Vissars,* 596 F.2d 400, 403 (9th Cir.1979). We conclude that any prejudice to defendants Kessler and Booth resulting from the admission of O'Shea's out of court declarations was slight in comparison to the overwhelming evidence linking Kessler and Booth to the robbery. The impact of

O'Shea's admissions was not so devastating that the jury could not be expected to disregard it if the district court had instructed them to do so. *See Bruton,* 391 U.S. at 135, 88 S.Ct. at 1627. Here the court struck the portion of O'Shea's admission which was adverse to Kessler, and offered to instruct the jury to disregard it.

## VIII. Validity of Search

■ At the trial, defendant Guerrero moved to suppress certain evidence seized as a result of a search of Marguerite Hilbert's home where defendant Guerrero was staying as a guest at the time of his arrest.[2] The district court found that Hilbert had freely and voluntarily consented to the warrantless search of her home. We can reverse this finding only if, after viewing all of the evidence in the light most favorable to the government, we conclude that it was clearly erroneous. *United States v. Faherty,* 692 F.2d 1258, 1260 (9th Cir.1982).

■ The evidence offered at the suppression hearing conflicted on the issue of whether the agents informed Hilbert that a search warrant was on the way. The district court chose to believe the agent's testimony that no such misrepresentation was made. We cannot say that this finding of fact was clearly erroneous. Consequently, we find no error in the district court's determination that Hilbert's consent was voluntarily given.

## IX. Sufficiency of Affidavit

■ In determining the reliability of hearsay information in an application for a search warrant, the two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), has been replaced by a "totality of circumstances" analysis. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Under this test, the affidavit need convince the

---

**2.** Guerrero has standing to contest the validity of the search of Hilbert's home by reason of his status as an overnight guest in the Hilbert home when the search occurred. *See United States v.*

*Robertson,* 606 F.2d 853, 858 n. 2 (9th Cir.1979); *see also United States v. Underwood,* 717 F.2d 482, 486 n. 1 (9th Cir.1983) (en banc) (Skopil, J., dissenting).

magistrate merely that "a substantial basis for crediting the hearsay" exists. *Id.*, 103 S.Ct. at 2335.

■ We think that a substantial basis was established for believing that the machine gun would be found at Kessler's business. The informant's knowledge can be inferred from the fact that the machine gun was in the informant's possession shortly before it came into the possession of Kessler. Moreover, the informant's veracity is established by the fact that the information supplied by the informant was contrary to his interest.[3] *See United States v. Harris*, 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723 (1971). The magistrate therefore was justified in crediting the hearsay.

### X. Sufficiency of Evidence

■ In reviewing defendant Walker's contention that the evidence against her was insufficient, we must construe the evidence in the light most favorable to the verdict. *United States v. Nicholson*, 677 F.2d 706, 708 (9th Cir.1982). The government's evidence clearly established the existence of a conspiracy as charged. In order to implicate defendant Walker in the conspiracy, the evidence must show only that she knew of the conspiracy and acted in furtherance of it. *United States v. Cloughessy*, 572 F.2d 190, 191 (9th Cir. 1977). The evidence clearly shows acts by Walker in furtherance of the conspiracy. It clearly identifies Walker as the driver of one of the getaway cars. It also establishes that she participated with Kessler in the fronts of heroin.[4] As to her knowledge, we think that a reasonable jury would be justified in inferring that Walker knew of the plan to rob the Sandy Boulevard bank; she was present at the April 29, 1980 meeting at Kessler's apartment where most of the planning for the robbery took place. Moreover, we think that the evidence was adequate to establish Walker's knowledge of the substance of the transaction occurring on April 30, 1980, which formed the basis of the charge under 18 U.S.C. § 2113(c).

### XI. Sixth Amendment Right to Speedy Trial

■ We assume without deciding that the applicable period within which to assess Booth's speedy trial claim is the 31-month period between Booth's arrest and trial. A 31-month delay in bringing a defendant to trial is presumptively prejudicial, and thus we proceed to examine the other factors in a speedy trial analysis. *See Barker v. Wingo*, 407 U.S. 514, 530–31, 92 S.Ct. 2182, 2191–95, 33 L.Ed.2d 101 (1972); *United States v. Henry*, 615 F.2d 1223, 1233 (9th Cir.1980).

■ Most of the delay in this case may be attributed to the government's interlocutory appeal from a pre-trial order suppressing certain evidence. In the absence of bad faith, neglect, or purpose to delay, an appeal by the government does not of itself weigh against the government. *See, e.g., United States v. Herman*, 576 F.2d 1139, 1146 (5th Cir.1978); *United States v. Osuna-Sanchez*, 446 F.2d 566, 567 (9th Cir. 1971), *cert. denied*, 404 U.S. 1022, 92 S.Ct. 698, 30 L.Ed.2d 672 (1972). None of these elements was present here. We need not decide whether undue court delay on appeal might constitute a "neutral" reason for delay that weighs lightly against the government, like delay due to trial court congestion, *see Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192, because we cannot regard the twenty month period here from notice of appeal to decision as an undue appellate delay. The delay for interlocuto-

---

**3.** The affidavit revealed that the informant was a prior felon who admitted to possession of a machine gun, and thus his statement exposed him to prosecution under 18 U.S.C.App. § 1202(a)(1).

**4.** The evidence tending to identify Walker as the driver of the getaway car sufficiently supports her conviction on the substantive robbery charge, and the evidence showing her participation in the heroin fronts adequately supports the guilty verdict on two of the heroin counts.

ry appeal was therefore justified and does not weigh against the government. *See United States v. Booth,* 669 F.2d 1231, 1241 (9th Cir.1981).

■ More important, Booth demonstrates only minimal prejudice from the delay. Admittedly, he suffered some personal prejudice from having to live with these unresolved criminal charges for 31 months. Although Booth was incarcerated during much of this period, not all of it was attributable to the pendency of these charges. When the government took its interlocutory appeal, Booth was conditionally released from custody. His reincarceration was due to an intervening conviction for armed robbery in the state of Washington. Moreover, he has not sufficiently shown any causal relationship between the delay and the unavailability of two witnesses who Booth claims would have testified to being with him on the day of the robbery. Although the defense knew as early as July 1980 that these witnesses would be helpful in establishing an alibi defense, it made no attempt to keep in touch with them. The defense did not have these witnesses under subpoena and did not attempt to locate them until July 1982, even though it was aware of the probability of having to defend against these charges. Thus, we cannot find that the delay was the cause of the loss of these witnesses. *See United States v. Netterville,* 553 F.2d 903, 916 (5th Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977). Because Booth has not shown that he was seriously prejudiced as a result of the delay and because the delay was justifiable, we hold that there was no violation of the speedy trial clause.[5]

The judgment of the district court is AFFIRMED.

5. Booth again raises the issue of the propriety of the admission of certain eyewitness testimony. He, however, is foreclosed from raising this issue in this court by our decision in *United States v. Kessler,* 692 F.2d 584 (9th Cir.1982), which disposed of that issue on an interlocutory appeal in this same action.