**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 13 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALEX CARREON, | No. 14-55524 |
| Petitioner - Appellant, | D.C. No. 5:13-cv-00702-JVS-JPR |
| v. | |
| DAVID B. LONG, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Submitted April 9, 2015[**]
Pasadena, California

Before: SILVERMAN and BEA, Circuit Judges and QUIST,[***] Senior District
Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Gordon J. Quist, Senior District Judge for the U.S.
District Court for the Western District of Michigan, sitting by designation.

Petitioner Alex Carreon was convicted by a jury in California state court of assault with intent to commit rape, forcible sexual penetration with a foreign object, and assault with force to produce great bodily injury. He appeals the district court's decision to deny his petition for writ of habeas corpus. We have jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 2253. We affirm.

Carreon argues the delay between his arrest and trial violated his right to a speedy trial under the Sixth Amendment. We balance four factors to evaluate a Sixth Amendment speedy trial claim: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant." *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In applying this standard, the California Court of Appeal measured the delay as the time between the second felony complaint and Carreon's trial. That decision was "an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has held the time between a defendant's arrest until his trial is the relevant time period, even when the initial charging document is dismissed. *See United States v. Loud Hawk*, 474 U.S. 302, 314 (1986) (evaluating the entire 90-month delay between the defendants' arrests until trial even though the district court dismissed,

2

and the government re-filed, multiple indictments throughout the case). Because the California Court of Appeal unreasonably applied Federal law, we review Carreon's Sixth Amendment speedy trial claim de novo. *See Castellanos v. Small*, 766 F.3d 1137, 1146 (9th Cir. 2014) ("If the state court applies a legal standard that contradicts clearly established federal law, we review de novo the applicant's claims, applying the correct legal standard to determine whether the applicant is entitled to relief.").

Carreon's claim fails under de novo review. The first factor "is a threshold issue," and triggers an inquiry into the remaining factors if the delay is longer than one year. *Gregory*, 322 F.3d at 1161–62. Because the delay between Carreon's arrest and his trial was more than one year, we evaluate the other three factors.

First, the "reason for the delay" is the "focal inquiry" of the analysis. *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007). Almost all the delay in this case was attributable to Carreon's requested continuances, the government's requested continuances in which Carreon acquiesced, Carreon's interlocutory appeal, and the government's continuances due to unavailable witnesses. These delays do not weigh in favor of Carreon's claim. *See Loud Hawk*, 474 U.S. at 316–17; *Barker*, 407 U.S. at 531; *United States v. Drake*, 543 F.3d 1080, 1085–86 (9th Cir. 2008).

3

Second, Carreon asserted his right to a speedy trial, but he requested continuances and acquiesced in the government's requested continuances after that assertion. Those continuances undermined his assertion of the right. *See King*, 483 F.3d at 976.

Third, the record shows the California Court of Appeal was correct to find that Carreon did not demonstrate prejudice due to the delay. It was Carreon's lack of diligence in staying in touch with the witness Joanna Osuna—and not the delay itself—that caused her absence. *See United States v. Guerrero*, 756 F.2d 1342, 1350 (9th Cir. 1984). Carreon's trial commenced on August 18, 2010. The defense's investigator first contacted Osuna, a security guard, in September 2009. Osuna told the investigator she was willing to speak with him but first needed her employer's permission and would contact the investigator once she obtained it. At that time, the investigator knew Osuna's address and her employer's address, but did not serve her a subpoena or otherwise attempt to procure her testimony. The investigator did not attempt to contact Osuna again until weeks before trial almost a year later, in August 2010. At that point, the investigator learned Osuna had moved on from her last known address and job about ten months before. The investigator then served a subpoena on Osuna's former employer to obtain Osuna's contact information, but the compliance date on the subpoena was August 30,

4

2010.  Despite the subpoena return date, Carreon declared he was ready for trial on July 30 and August 12 and the court set trial for August 16.  Then, on August 16, Carreon filed his motion to dismiss based on a violation of his Sixth Amendment speedy trial right, relying primarily on his inability to locate Osuna as the alleged prejudice.

Our dissenting colleague would excuse defense counsel's lack of diligence.  Ninth Circuit precedent forecloses that position.  We have held there must be a "causal relationship between the delay and the unavailability" of the missing witnesses.  *Guerrero*, 756 F.2d at 1350; *see also Gregory*, 322 F.3d at 1163 ("The prejudice with which we are concerned is prejudice caused by the delay that triggered the *Barker* inquiry, not simply any prejudice that may have occurred before the trial date but unrelated to the fact of the delay itself.").  *Guerrero* involved a 31-month delay in bringing the defendant to trial, and the defendant argued that the delay prejudiced him because he could not locate two witnesses.  *Guerrero*, 756 F.2d at 1349–50.  We found it was the defendant's lack of diligence, and not the delay that caused the witnesses' absence:

> Although the defense knew as early as July 1980 that these witnesses
> would be helpful in establishing an alibi defense, it made no attempt
> to keep in touch with them. The defense did not have these witnesses
> under subpoena and did not attempt to locate them until July 1982,
> even though it was aware of the probability of having to defend

5

against these charges. Thus, we cannot find that the delay was the cause of the loss of these witnesses.

*Id.* at 1350. The same can be said of the defense in this case. California law authorizes defendants to subpoena a witness to procure her attendance at trial[1] and to take a witness's deposition if the defense is concerned the witness will not be able to attend trial. *See* Cal. Penal Code §§ 1326(a), 1336(a). But Carreon's counsel did not take advantage of either of these methods to ensure that the jury would hear Osuna's testimony. Further, the investigator did not start looking for Osuna until weeks before trial. Defense counsel compounded the harm caused by his lack of diligence by announcing he was ready for trial despite knowing it was a matter of weeks before he would obtain Osuna's contact information. And nothing in the record suggests the trial court would have denied defense counsel a further continuance based on Osuna's unavailability had the defense so moved. Indeed, the trial court had granted the government several continuances due to unavailable witnesses. As a result, the delay did not cause Osuna's absence. *See Guerrero*, 756 F.2d at 1350.

Carreon may have a claim for ineffective assistance of counsel due to the defense counsel's conduct, but he does not have a claim under the Speedy Trial

---

[1]A witness can be subpoenaed to be "on-call" for a period of time. *See People v. Perez*, 207 Cal. App. 3d 431, 436–37 (Ct. App. 1989).

6

Clause of the Sixth Amendment. Because the *Barker* factors weigh against

Carreon's claim, the California Court of Appeal was correct to find Carreon's

Sixth Amendment right to a speedy trial was not violated.

**AFFIRMED**.

Carreon v. Long, 14-55524

QUIST, Senior District Judge, concurring:

I agree that Carreon's petition should be denied for all of the reasons stated in the principal Memorandum. I, respectfully, write separately to explain why I believe that Carreon has not demonstrated prejudice resulting from Osuna's absence.

As suggested by the dissent, this case boiled down to the issue of consent. The victim claimed that, as a result of heavy drinking, she was in and out of consciousness during the night in question. She remembered that she regained consciousness on someone's lawn, that Carreon choked her, and that she told him she would not tell what happened if he let her live. The nurse who examined the victim testified that

> [the victim] not only had lots of scrapes and abrasions on both sides of her neck, on her breasts, her backside, her knees, and legs, she also had red raised bumps on her face that were consistent with her claim that [Carreon] had strangled her. [The victim] also had what appeared to be bite marks on her abdomen and left elbow. In addition, . . . [the victim] had multiple lacerations to her genitalia, and a very large red contusion and an avulsion (torn skin that is hanging by a thread) on her anus.

*People v. Carreon*, No. E052856, 2012 WL 5992736, at *5 (Cal. Ct. App. Nov. 29, 2012).

In contrast, Carreon told police that he and the victim had "a consensual sexual encounter" that began in his car, and that he eventually dragged the victim

onto the grass, where she took off her clothes. *Id.* at *1. He denied that they had intercourse. *Id.* Carreon denied that the victim had resisted or that he had choked her. *Id.* At trial, Carreon provided testimony from an expert witness who testified that the victim's injuries were consistent with a consensual sexual encounter. *Id.*

Contrary to the assertion by our dissenting colleague, Osuna's statement to the police does not indicate that she would have provided "highly exculpatory testimony." Osuna told the police that, while she was driving as part of her patrol duties, she saw a clothed male lying on top of an unclothed female in a yard and she assumed they were having sex. Assuming that Osuna would have testified consistently with that statement, the testimony would have demonstrated only that the victim was not visibly struggling against Carreon at the moment that Osuna drove past. That is a far cry from demonstrating consent by an intoxicated woman who, according to Carreon, had to be "dragged" out of a vehicle and showed evidence of severe battery. Moreover, Osuna's statement to the police did not contradict anything in the victim's description of the events. In short, it is difficult to imagine how someone with a brief drive-by view of a portion of the encounter could provide testimony that would give the jury any insight into the issue of consent.

Finally, I offer no opinion regarding a claim based on ineffective assistance of counsel, as that issue is not before us.

Carreon v. Long, 14-55524

SILVERMAN, Circuit Judge, dissenting:


It is not in every rape case with a consent defense that there is an independent eyewitness who happens upon the defendant and the alleged victim having sexual intercourse. We see cases where biased friends of the defendant (such as fraternity brothers) testify to observing their friend and the alleged victim having supposedly consensual sex. We see cases in which independent witnesses testify to the alleged victim's conduct *before* and *after* the sexual encounter, but not *during* the sexual encounter itself.


This case is unusual. A totally independent witness – a security guard making her rounds – told police that she came upon the defendant and the alleged victim having what appeared to be consensual sexual relations on the lawn of the property she was patrolling. Even if the security guard's observations would not conclusively establish innocence, if you're a defendant charged with rape and consent is your defense, that's about as good as it gets.


The problem is that during the 864 days during which petitioner was

incarcerated while awaiting trial, the security guard moved away and left no forwarding address.  The majority agrees that the 864 days in which petitioner was incarcerated while awaiting trial was excessive for speedy trial purposes, but holds that there was no Sixth Amendment speedy trial violation, mainly because petitioner was not prejudiced by the delay.  And that's because, the majority says, it was counsel's lack of diligence – not the delay itself – that caused the loss of this crucial witness.

Counsel should have "stay[ed] in touch" with the witness, the majority says, but it is not clear exactly what he should have done.  Periodically called her on the phone?  Sent her cards?  Kept her under surveillance for over two years?   Unless counsel drove by her home and actually caught her in the act of packing up her car, counsel's attempts to "stay[] in touch" with the witness at most would have hastened the discovery that she had disappeared.  The majority says that counsel should have subpoenaed her. Subpoenaed her to what?  There was no firm trial date until nearly two-and-a-half years after petitioner's arrest, and by that time, the witness had moved and left no address. And even if the witness had been subpoenaed early on to some phantom trial date, what would have kept her from disappearing just as she did?  A subpoena is not a writ of ne exeat.  If counsel had

known that the witness was planning to move, he could have made efforts to depose her, but who knew? There is nothing in the record suggesting that counsel should have known that the witness was going to up and leave.

The majority relies heavily on *United States v. Guerrero*, 756 F.2d 1342 (9th Cir. 1984), but there is a big difference between what happened in that case and ours. In our case, the investigator hired by the defendant's lawyers contacted the prospective witness, the security guard, well before she would be needed in court. Then, unbeknownst to anyone, the witness moved away and left no address. In *Guerrero*, although the defense knew about the existence of possible alibi witnesses as early as July 1980, it "did not attempt to locate them until July 1982, even though it was aware of the probability of having to defend against these charges." That is why we held that Guerrero failed to show any causal connection between the delay and the loss of the witnesses – they didn't even *look* for alibi witness for two years. *Id*. at 1350.

And speaking of diligence, how does any possible shortcoming of defense counsel absolve the Riverside County Superior Court and the district attorney of *their* obligations to take care that a defendant is tried in a timely manner?

The bottom line is this: In most speedy trial violations, the pre-trial delay thankfully causes no harm, but that's not the case here. By the time this case finally wound its way to trial nearly two-and-a-half years after petitioner's arrest, an independent witness who could have provided highly exculpatory testimony had moved away and couldn't be found. This is exactly the sort of prejudice that the right to a speedy trial is designed to prevent. As the Supreme Court said in *Barker v. Wingo*, 407 U.S. 514, 532 (1972), "the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious."

Because habeas relief should have been granted, I respectfully dissent.